IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

TREYVON T. HICKMAN,

    Defendant.

Case No. 25-00008-01-CR-W-SRB

## PLEA AGREEMENT

Pursuant to Rule 11(c)(1)(B) of the Federal Rules of Criminal Procedure, the parties described below have entered into the following plea agreement:

**1. The Parties.** The parties to this agreement are the United States Attorney's Office ("USAO") for the Western District of Missouri (otherwise referred to as "the Government" or "the United States"), represented by R. Matthew Price, United States Attorney, and Alison D. Dunning, Assistant United States Attorney, and the defendant, Treyvon T. Hickman ("the defendant"), represented by attorney Ronna Holloman-Hughes.

The defendant understands and agrees that this plea agreement is only between him and the United States Attorney for the Western District of Missouri, and that it does not bind any other federal, state, or local prosecution authority or any other government agency, unless otherwise specified in this agreement.

**2. Defendant's Guilty Plea.** The defendant agrees to and hereby does plead guilty to Count One of the Indictment charging him with transmitting interstate threatening communications, in

violation of 18 U.S.C. § 875(c). By entering into this plea agreement, the defendant admits that he knowingly committed the offense charged and is in fact guilty of the offense.

**3. Factual Basis for Guilty Plea.** The parties agree that the facts constituting the offense to which the defendant is pleading guilty include the following:

By his plea of guilty, the defendant, Treyvon T. Hickman, admits that he committed the offense of transmitting interstate threatening communications, as charged in Count One of the Indictment, in that on or about March 27, 2021, said date being approximate, in the Western District of Missouri and elsewhere, the defendant, knowingly and willfully transmitted in interstate and foreign commerce from the State of Missouri, a communication via the Internet, to Victim 1, an employee of a trucking company then located in the State of Michigan, and the communication contained a threat to injure the person of Victim 1, to wit: "I am going to shoot you in the face soon as I get the chance," "your not unknown. I'm taking your face off," "Most people who die aren't afraid or even aware when it happens," "Fun fact, most people get killed by friends. Enemies don't know where to find you," and "no I'm saying I'm going to shoot you in the face, that's what I'm saying," knowing that the communication would be understood as a true threat, all in violation of Title 18, United States Code, Section 875(c).

More specifically:

On or about the dates between and including March 27, 2021, and March 31, 2021, the defendant, Treyvon T. Hickman, knowingly and willfully transmitted a series of text messages over the Internet to a 41-year-old victim, referred to herein and in the Indictment as "Victim 1," knowing that the communications would be understood by Victim 1 as a true threat. At all relevant times, the defendant was located in the Western District of Missouri and Victim 1 was located in the state of Michigan.

The first text message the defendant sent to Victim 1 was on or about March 27, 2021, and stated "I'm going to shoot you in the face soon as I get the chance." The subsequent messages sent by the defendant on the same date, some of which also contained a threat to injure the person of Victim 1, included the following:

- I have the right person, I'll see you around. I promise.
- I'm not looking for you, I know where you be. I'm coming I promise when you least expect it.
- You're not unknown. I'm taking your face off
- Ill call your name right before I pull it? Deal?
- Time is the best teacher, people get comfortable and forget then BOOM
- Ha no thank you, you'll see me face to face. You'll forget and that's when
- You're being hunted

2

- Fun fact, most people get killed by friends. Enemies don't know where to find you.
- No I'm saying I'm going to shoot you in the face, that's what I'm saying
- Bingo, you won't know those details till we're face to face
- Fun fact, most people don't observe their environment when moving around
- Most people who die aren't afraid or even aware when it happens

After Victim 1 responded, "You obviously don't know who you're talking to," the defendant replied, "I do and welcome you be freed from your suffering." The following day, on March 28, 2021, the defendant sent a message to Victim 1 that stated, "Job title has nothing to do with safety, I'll see you soon."

The defendant sent the messages to Victim 1 using TextNow, a Voice over Internet Protocol service that allows users to make calls and send texts over Wi-Fi. TextNow, an electronic communication service, provides users a real phone number that can be used on computers and smartphones, including iPhone and Android cell phones, or other devices with an Internet connection. The application can be used on multiple devices under the same login at the same time. The TextNow phone number used by the defendant, (614) 465-6971, was subscribed to by the defendant with username treyvonhickman95. The defendant sent the messages using a Wi-Fi connection subscribed to his home address on West 47th Street in Kansas City, Missouri.

Victim 1 reported the threats to local police in Michigan on March 27, 2021, and then to the Federal Bureau of Investigation (FBI) the following day. Victim 1 was concerned about the threats and had changed her daily habits due to her concerns, including keeping a handgun near her while in her house, keeping the blinds closed, and carrying a handgun while performing daily activities outside her house. At the time of her original report, Victim 1 did not know the identity of the person sending her the threatening messages.

At the time of the offense charged in Count One of the Indictment, Victim 1 was employed as a dispatcher for a trucking company, SKMK Transport, which was also located in Michigan. The defendant had worked for the trucking company as a truck driver for approximately six months. Several weeks before the messages were sent to Victim 1, the defendant became frustrated with the trucking company when they dispatched him to North Carolina rather than letting him return home to Kansas City, Missouri, as he requested. He was fired after he refused to continue the trip and drove the truck to Kansas City. The defendant learned the trucking company was withholding his final pay of approximately $3,000 shortly before he sent the first message to Victim 1.

The defendant was surveilled and arrested by FBI and other law enforcement personnel in Kansas City, Missouri on March 30, 2021, after he was identified as the suspect who transmitted the threatening text messages. Just before his arrest, the defendant moved a long gun from the back seat to the front seat of the vehicle he was driving. A subsequent lawful search of the vehicle resulted in the recovery of the defendant's firearm, a Century Arms, 7.62

3

caliber rifle bearing serial number RAS 47105490, with an attached magazine containing 30 rounds of Red Army 7.62 ammunition.

At the time of his arrest on March 30, 2021, the defendant was in possession of his cell phone, a Coolpad Legacy, Model CP3705AS, Android cell phone. A later forensic examination of the phone at the Heart of America Regional Forensic Computer Laboratory, resulted in the discovery of information identifying the defendant as the user of the phone; the existence of artifacts of the TextNow application, including information indicating the application was first purchased or downloaded by Google account treyvonhickman95@gmail.com on August 19, 2019, and was last installed on February 1, 2021; saved contacts for "SKMK" and "Mayhem SKMK"; numerous images of various firearms; searches on Armlist.com on March 27, 2021, related to a variety of firearms available in the Kansas City area; and messages with two individuals on March 27, and March 28, 2021, regarding the sale or purchase of firearms.

The defendant was also interviewed on March 30, 2021. During the interview, FBI personnel informed the defendant that they were investigating threatening messages sent by an account associated with him to his former employer. The defendant admitted that he had recently become frustrated with the company after he believed they treated him unfairly, but he denied sending the threats. He also denied using TextNow or having Wi-Fi at his residence. He was released pending further investigation. The next day, the defendant sent several additional threatening messages to Victim 1. The first message had an emoji of eyes looking around and the word "Where." The second message said in part, "…karma misses no one."

**4. Use of Factual Admissions and Relevant Conduct.** The defendant acknowledges, understands and agrees that the admissions contained in Paragraph 3 and other portions of this plea agreement will be used for the purpose of determining his guilt and advisory sentencing range under the United States Sentencing Guidelines ("U.S.S.G."), including the calculation of the defendant's offense level in accordance with U.S.S.G. § 1B1.3(a)(2). The defendant acknowledges, understands and agrees that in calculating the offense level for the charges to which the defendant is pleading guilty, the conduct charged in any dismissed counts of the Indictment as well as all other uncharged related criminal activity may be considered as "relevant conduct" pursuant to U.S.S.G. § 1B1.3(a)(2).

**5. Statutory Penalties.** The defendant understands that the maximum penalty the Court can impose for transmitting interstate threatening communications, as alleged in Count One of the Indictment, is 5 years' imprisonment, a $250,000 fine, and a term of supervised release of up to three

4

years. The defendant further understands that the Court must impose a $100 mandatory special assessment, which must be paid in full at the time of sentencing. The defendant understands that transmitting interstate threatening communications is a Class D felony.

6. **Sentencing Procedures.** The defendant acknowledges, understands and agrees to the following:

    a. In determining the appropriate sentence, the Court will consult and consider the United States Sentencing Guidelines promulgated by the United States Sentencing Commission; these Guidelines, however, are advisory in nature, and the Court may impose a sentence either less than or greater than the defendant's applicable Guidelines range;

    b. The Court will determine the defendant's applicable Sentencing Guidelines range at the time of sentencing;

    c. In addition to a sentence of imprisonment, the Court may impose a term of supervised release of up to three years; that the Court must impose a period of supervised release if a sentence of imprisonment of more than one year is imposed;

    d. If the defendant violates a condition of his supervised release, the Court may revoke his supervised release and impose an additional period of imprisonment of up to two years without credit for time previously spent on supervised release. In addition to a new term of imprisonment, the Court also may impose a new period of supervised release, the length of which cannot exceed two years, less the term of imprisonment imposed upon revocation of the defendant's first supervised release;

    e. The Court may impose any sentence authorized by law, including a sentence that is outside of, or departs from, the applicable Sentencing Guidelines range;

    f. Any sentence of imprisonment imposed by the Court will not allow for parole;

    g. The Court is not bound by any recommendation regarding the sentence to be imposed or by any calculation or estimation of the Sentencing Guidelines range offered by the parties or the United States Probation Office; and

    h. The defendant may not withdraw his guilty plea solely because of the nature or length of the sentence imposed by the Court.

7. **Government's Agreements.** Based upon evidence in its possession at this time, the United States Attorney's Office for the Western District of Missouri, as part of this plea agreement, agrees

5

not to bring any additional charges against the defendant for any federal criminal offenses related to interstate threats and/or cyberstalking, for which it has venue and which arose out of the defendant's conduct described above. Furthermore, the Government agrees to dismiss Count Two of the Indictment after the defendant is sentenced in this case.

The defendant understands that this plea agreement does not foreclose any prosecution for an act of murder or attempted murder, an act or attempted act of physical or sexual violence against the person of another, or a conspiracy to commit any such acts of violence or any criminal activity of which the United States Attorney for the Western District of Missouri has no knowledge.

The defendant recognizes that the United States' agreement to forego prosecution of all of the criminal offenses with which the defendant might be charged is based solely on the promises made by the defendant in this agreement. If the defendant breaches this plea agreement, the United States retains the right to proceed with the original charges and any other criminal violations established by the evidence. The defendant expressly waives his right to challenge the initiation of the dismissed or additional charges against him if he breaches this agreement. The defendant expressly waives his right to assert a statute of limitations defense if the dismissed or additional charges are initiated against him following a breach of this agreement. The defendant further understands and agrees that if the Government elects to file additional charges against him following his breach of this plea agreement, he will not be allowed to withdraw his guilty plea.

**8. Preparation of Presentence Report.** The defendant understands the United States will provide to the Court and the United States Probation Office a government version of the offense conduct. This may include information concerning the background, character, and conduct of the defendant, including the entirety of his criminal activities. The defendant understands these disclosures are not limited to the counts to which he has pleaded guilty. The United States may respond to

comments made or positions taken by the defendant or the defendant's counsel and to correct any misstatements or inaccuracies. The United States further reserves its right to make any recommendations it deems appropriate regarding the disposition of this case, subject only to any limitations set forth in this plea agreement. The United States and the defendant expressly reserve the right to speak to the Court at the time of sentencing pursuant to Rule 32(i)(4) of the Federal Rules of Criminal Procedure.

**9. Withdrawal of Plea.** Either party reserves the right to withdraw from this plea agreement for any or no reason at any time prior to the entry of the defendant's plea of guilty and its formal acceptance by the Court. In the event of such withdrawal, the parties will be restored to their pre-plea agreement positions to the fullest extent possible. However, after the plea has been formally accepted by the Court, the defendant may withdraw his plea of guilty only if the Court rejects the plea agreement or if the defendant can show a fair and just reason for requesting the withdrawal. The defendant understands that if the Court accepts his plea of guilty and this plea agreement but subsequently imposes a sentence that the defendant does not expect, like or agree with, he will not be permitted to withdraw his plea of guilty.

**10. Agreed Guidelines Applications.** With respect to the application of the Sentencing Guidelines to this case, the parties stipulate and agree as follows:

    a. The Sentencing Guidelines do not bind the Court and are advisory in nature. The Court may impose a sentence that is either above or below the defendant's applicable Guidelines range;

    b. The parties agree that the applicable Guidelines section for transmitting interstate threatening communications is U.S.S.G. § 2A6.1, which provides for a base offense level of 12;

    c. The parties further agree that a six-level enhancement is applicable under U.S.S.G. § 2A6.1(b)(1), because the offense involved any conduct evidencing an intent to carry out such threat;

7

d. The parties further agree that a two-level enhancement is applicable under U.S.S.G. § 2A6.1(b)(2)(A), because the offense involved more than two threats;

e. The defendant has admitted his guilt and clearly accepted responsibility for his actions and has assisted authorities in the investigation or prosecution of his own misconduct by timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the Government to avoid preparing for trial and permitting the Government and the Court to allocate their resources efficiently. Therefore, he is entitled to a three-level reduction pursuant to § 3E1.1(b) of the Sentencing Guidelines. The Government, at the time of sentencing, will file a written motion with the Court to that effect, unless the defendant (1) fails to abide by all of the terms and conditions of this plea agreement and his pretrial release; or (2) attempts to withdraw his guilty plea, violates the law, or otherwise engages in conduct inconsistent with his acceptance of responsibility;

f. There is no agreement between the parties regarding the defendant's criminal history category. The parties agree that the Court will determine the defendant's applicable criminal history category after receipt of the presentence investigation report prepared by the United States Probation Office;

g. The defendant understands that the estimate of the parties with respect to the Guidelines computation set forth in the subsections of this paragraph does *not* bind the Court or the United States Probation Office with respect to the appropriate Guidelines levels. Additionally, the failure of the Court to accept these stipulations will not, as outlined in Paragraph 9 of this plea agreement, provide the defendant with a basis to withdraw his plea of guilty;

h. The defendant consents to judicial fact-finding by a preponderance of the evidence for all issues pertaining to the determination of the defendant's sentence, including the determination of any mandatory minimum sentence (including the facts that support any specific offense characteristic or other enhancement or adjustment). The defendant waives any right to a jury determination beyond a reasonable doubt of all facts used to determine and enhance the sentence imposed and waives any right to have those facts alleged in the Indictment. The defendant also agrees that the Court, in finding the facts relevant to the imposition of sentence, may consider any reliable information, including hearsay;

i. The defendant understands and agrees that the factual admissions contained in Paragraph 3 of this plea agreement, and any admissions that he will make during his plea colloquy, support the imposition of the agreed-upon Guidelines calculations contained in this agreement; and

j. The United States may seek an upward departure from the Guidelines or a sentence outside the Guidelines range, and the defendant may seek a downward departure from the Guidelines or a sentence outside the Guidelines range. The agreement by the parties is not binding upon the Court or the United States Probation Office and the Court may impose any sentence authorized by law, including any sentence outside the applicable Guidelines range.

8

**11. Effect of Non-Agreement on Guidelines Applications.** The parties understand, acknowledge and agree that there are no agreements between the parties with respect to any Sentencing Guidelines issues other than those specifically listed in Paragraph 10, and its subsections. As to any other Guidelines issues, the parties are free to advocate their respective positions at the sentencing hearing.

**12. Change in Guidelines Prior to Sentencing.** The defendant agrees that if any applicable provision of the Guidelines changes after the execution of this plea agreement, then any request by defendant to be sentenced pursuant to the new Guidelines will make this plea agreement voidable by the United States at its option. If the Government exercises its option to void the plea agreement, the United States may charge, reinstate, or otherwise pursue any and all criminal charges that could have been brought but for this plea agreement.

**13. Government's Reservation of Rights.** The defendant understands that the United States expressly reserves the right in this case to:

   a. Oppose or take issue with any position advanced by defendant at the sentencing hearing which might be inconsistent with the provisions of this plea agreement;

   b. Comment on the evidence supporting the charges in the Indictment;

   c. Oppose any arguments and requests for relief the defendant might advance on an appeal from the sentences imposed and that the United States remains free on appeal or collateral proceedings to defend the legality and propriety of the sentence actually imposed, even if the Court chooses not to follow any recommendation made by the United States; and

   d. Oppose any post-conviction motions for reduction of sentence, or other relief.

**14. Waiver of Constitutional Rights.** The defendant, by pleading guilty, acknowledges that he has been advised of, understands, and knowingly and voluntarily waives the following rights:

   a. The right to plead not guilty and to persist in a plea of not guilty;

9

      b. The right to be presumed innocent until his guilt has been established beyond a reasonable doubt at trial;

      c. The right to a jury trial, and at that trial, the right to the effective assistance of counsel;

      d. The right to confront and cross-examine the witnesses who testify against him;

      e. The right to compel or subpoena witnesses to appear on his behalf; and

      f. The right to remain silent at trial, in which case his silence may not be used against him.

The defendant understands that by pleading guilty, he waives or gives up those rights and that there will be no trial. The defendant further understands that if he pleads guilty, the Court may ask him questions about the offense or offenses to which he pleaded guilty, and if the defendant answers those questions under oath and in the presence of counsel, his answers may later be used against him in a prosecution for perjury or making a false statement. The defendant also understands he has pleaded guilty to a felony offense and, as a result, will lose his right to possess a firearm or ammunition and might be deprived of other rights, such as the right to vote or register to vote, hold public office, or serve on a jury.

**15. Waiver of Appellate and Post-Conviction Rights.**

      a. The defendant acknowledges, understands and agrees that by pleading guilty pursuant to this plea agreement he waives his right to appeal or collaterally attack a finding of guilt following the acceptance of this plea agreement, except on grounds of (1) ineffective assistance of counsel; or (2) prosecutorial misconduct.

      b. The defendant expressly waives his right to appeal his sentence, directly or collaterally, on any ground except claims of (1) ineffective assistance of counsel; (2) prosecutorial misconduct; or (3) an illegal sentence. An "illegal sentence" includes a sentence imposed in excess of the statutory maximum, but does *not* include less serious sentencing errors, such as a misapplication of the Sentencing Guidelines, an abuse of discretion, or the imposition of an unreasonable sentence. However, if the United States exercises its right to appeal the sentence imposed as authorized by 18 U.S.C. § 3742(b), the defendant is released from this waiver and may, as part of the Government's appeal, cross-appeal his sentence as

authorized by 18 U.S.C. § 742(a) with respect to any issues that have not been stipulated to or agreed upon in this agreement.

**16. Financial Obligations.** By entering into this plea agreement, the defendant represents that he understands and agrees to the following financial obligations:

a. The Court may order restitution to the victims of the offense to which the defendant is pleading guilty. The defendant agrees that the Court may order restitution in connection with the conduct charged in any counts of the Indictment which are to be dismissed and all other uncharged related criminal activity;

b. The United States may use the Federal Debt Collection Procedures Act and any other remedies provided by law to enforce any restitution order that may be entered as part of the sentence in this case and to collect any fine.

c. The defendant will fully and truthfully disclose all assets and property in which he has any interest, or over which the defendant exercises control directly or indirectly, including assets and property held by a spouse, nominee or other third party. The defendant's disclosure obligations are ongoing and are in force from the execution of this agreement until the defendant has satisfied the restitution order in full;

d. Within 10 days of the execution of this plea agreement, at the request of the USAO, the defendant agrees to execute and submit (1) a Tax Information Authorization form; (2) an Authorization to Release Information; (3) a completed financial disclosure statement; and (4) copies of financial information that the defendant submits to the U.S. Probation Office. The defendant understands that compliance with these requests will be taken into account when the United States makes a recommendation to the Court regarding the defendant's acceptance of responsibility;

e. The defendant hereby authorizes the USAO to obtain a credit report pertaining to him to assist the USAO in evaluating the defendant's ability to satisfy any financial obligations imposed as part of the sentence;

f. The defendant understands that a Special Assessment will be imposed as part of the sentence in this case. The defendant promises to pay the Special Assessment of $100 by submitting a satisfactory form of payment to the Clerk of the Court prior to appearing for the sentencing proceeding in this case. The defendant agrees to provide the Clerk's receipt as evidence of his fulfillment of this obligation at the time of sentencing;

g. The defendant certifies that he has made no transfer of assets or property for the purpose of (1) evading financial obligations created by this Agreement; (2) evading obligations that may be imposed by the Court; nor (3) hindering efforts of the USAO to enforce such financial obligations. Moreover, the defendant promises that he will make no such transfers in the future; and

11

h. In the event the United States learns of any misrepresentation in the financial disclosure statement, or of any asset in which the defendant had an interest at the time of this plea agreement that is not disclosed in the financial disclosure statement, and in the event such misrepresentation or nondisclosure changes the estimated net worth of the defendant by ten thousand dollars ($10,000.00) or more, the United States may at its option: (1) choose to be relieved of its obligations under this plea agreement; or (2) let the plea agreement stand, collect the full forfeiture, restitution, and fines imposed by any criminal or civil judgment, and also collect 100% (one hundred percent) of the value of any previously undisclosed assets. The defendant agrees not to contest any collection of such assets. In the event the United States opts to be relieved of its obligations under this plea agreement, the defendant's previously entered pleas of guilty shall remain in effect and cannot be withdrawn.

17. **Waiver of FOIA Request.** The defendant waives all of his rights, whether asserted directly or by a representative, to request or receive from any department or agency of the United States any records pertaining to the investigation or prosecution of this case including, without limitation, any records that may be sought under the Freedom of Information Act, 5 U.S.C. § 552, or the Privacy Act of 1974, 5 U.S.C. § 552a.

18. **Waiver of Claim for Attorney's Fees.** The defendant waives all of his claims under the Hyde Amendment, 18 U.S.C. § 3006A, for attorney's fees and other litigation expenses arising out of the investigation or prosecution of this matter.

19. **Defendant's Breach of Plea Agreement.** If the defendant commits any crimes, violates any conditions of release, or violates any term of this plea agreement between the signing of this plea agreement and the date of sentencing, or fails to appear for sentencing, or if the defendant provides information to the Probation Office or the Court that is intentionally misleading, incomplete, or untruthful, or otherwise breaches this plea agreement, the United States will be released from its obligations under this agreement. The defendant, however, will remain bound by the terms of the agreement, and will not be allowed to withdraw his plea of guilty.

The defendant also understands and agrees that in the event he violates this plea agreement, all statements made by him to law enforcement agents subsequent to the execution of this plea agreement, any testimony given by him before a grand jury or any tribunal or any leads from such statements or testimony shall be admissible against him in any and all criminal proceedings. The defendant waives any rights that he might assert under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule that pertains to the admissibility of any statements made by him subsequent to this plea agreement.

20. **Defendant's Representations.** The defendant acknowledges that he has entered into this plea agreement freely and voluntarily after receiving the effective assistance, advice and approval of counsel. The defendant acknowledges that he is satisfied with the assistance of counsel, and that counsel has fully advised him of his rights and obligations in connection with this plea agreement. The defendant further acknowledges that no threats or promises, other than the promises contained in this plea agreement, have been made by the United States, the Court, his attorneys or any other party to induce him to enter his plea of guilty.

21. **No Undisclosed Terms.** The United States and defendant acknowledge and agree that the above-stated terms and conditions, together with any written supplemental agreement that might be presented to the Court in camera, constitute the entire plea agreement between the parties, and that any other terms and conditions not expressly set forth in this agreement or any written supplemental agreement do not constitute any part of the parties' agreement and will not be enforceable against either party.

22. **Standard of Interpretation.** The parties agree that, unless the constitutional implications inherent in plea agreements require otherwise, this plea agreement should be interpreted according to general contract principles and the words employed are to be given their normal and ordinary

meanings. The parties further agree that, in interpreting this agreement, any drafting errors or ambiguities are not to be automatically construed against either party, whether or not that party was involved in drafting or modifying this agreement.

R. Matthew Price
United States Attorney

Dated: 8/5/2025

_____
Alison D. Dunning
Assistant United States Attorney
Chief, Special Victims Unit

I have consulted with my attorney and fully understand all of my rights with respect to the offenses charged in the Indictment. Further, I have consulted with my attorney and fully understand my rights with respect to the provisions of the Sentencing Guidelines. I have read this plea agreement and carefully reviewed every part of it with my attorney. I understand this plea agreement and I voluntarily agree to it.

Dated: 8/5/2025

_____
Treyvon T. Hickman
Defendant

I am defendant Treyvon T. Hickman's attorney. I have fully explained to Mr. Hickman his rights with respect to the offenses charged in the Indictment. Further, I have reviewed with him the provisions of the Sentencing Guidelines which might apply in this case. I have carefully reviewed every part of this plea agreement with him. To my knowledge, Mr. Hickman's decision to enter into this plea agreement is an informed and voluntary one.

Dated: 8/5/2025

_____
Ronna Holloman-Hughes
Attorney for Defendant Treyvon T. Hickman